UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DORAN A. SCHMITT, as Special Administrator of the Estate of Daniel Eric Schmitt,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | CIV. 13-5066-JLV<br><br><br>ORDER |

**INTRODUCTION**

Before the court is the government's motion to dismiss plaintiff Doran Schmitt's complaint for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively.   (Docket 20).   Alternatively, the government seeks summary judgment.   Id.   Also before the court is the government's motion to strike the affidavit of plaintiff's proffered expert, Phillip Hayden.   (Docket 42).   The court referred both motions to Magistrate Judge Daneta Wollmann for a report and recommendation.   (Docket 48).   Magistrate Judge Wollmann issued a report recommending the court grant the government's Rule 12(b)(1) motion to dismiss. (Docket 49).   Plaintiff timely filed objections and the government filed a response to plaintiff's objections.[1]   (Dockets 50, 51 & 52).

---

[1]Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.   Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).   The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1).   For the reasons stated below, defendant's objections are overruled.   The court adopts the report and recommendation of the magistrate judge in full.   The government's motion to strike is denied as moot.

## ANALYSIS

### I.    Magistrate Judge's Findings of Fact

Neither party objected to the magistrate judge's findings of fact.   See Dockets 51 & 52.   The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).   Although it does not affect the court's analysis, the court notes that Bureau of Land Management ("BLM") Ranger Charles Huston testified that upon arriving at the Orman Dam they went to Middle Point, not Gaden's Point.   (Docket 40-4 at p. 15).[2]   Specific facts will be discussed to the extent they relate to plaintiff's objections.

### II.    Magistrate Judge's Legal Conclusions

Ms. Schmitt asserts the magistrate judge erred in (1) determining the court's jurisdiction was not inextricably linked to the merits of the substantive claim; and (2) finding the discretionary function exception applies.   (Docket 51

---

[2]The court's pincites to transcripts reference the page number as identified by CM/ECF.

at pp. 3-16).   Ms. Schmitt again challenged the arguments promulgated by the government in support of its motion to dismiss and motion for summary judgment.[3]

### 1. The Court's Subject Matter Jurisdiction Is Not Inextricably Bound to the Merits of Plaintiff's Wrongful Death Claim

Ms. Schmitt asserts "the BLM policy materials were necessary both in determining jurisdiction and also in determining [Ranger Huston's] duty, and the Magistrate should not have determined jurisdiction and negligence to be severable."   (Docket 51 at p. 4).   The court agrees with, and the plaintiff does not object to, the magistrate judge's conclusion that the government's Rule 12(b)(1) motion to dismiss is a factual attack challenging the existence of the court's subject matter jurisdiction.   (Docket 49 at p. 8).   In a factual attack, the court can look to evidence outside the pleadings when determining subject matter jurisdiction.   Whalen v. United States, 29 F. Supp. 2d 1093, 1095 & n.2 (D.S.D. 1998) (citing Osborn v. United States, 918 F.2d 724 (8th Cir. 1990)). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists in a factual attack.   Id. (citing Osborn, 918 F.2d at 730 n.6).   However, "[w]hen a jurisdictional issue is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue, a court should not consider

---

[3]Because the magistrate judge resolved the government's motion to dismiss based on the discretionary function exception to the Federal Tort Claims Act ("FTCA"), resolution of the government's remaining arguments was not necessary.

information outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(1)." Id. (citing Osborn, 918 F.2d at 730).

In Whalen, Jeffrey Whalen, Jr. was a passenger in a vehicle traveling on a dirt road leading up to Sheep Mountain Table in the Badlands National Park. Id. at 1095.   At the top of the table, Mr. Whalen exited the vehicle, walked a short distance and fell 300 to 400 feet to his death.   Id.   The estate of Mr. Whalen sued the National Park Service ("NPS") under the FTCA.   Id. at 1094. The court concluded the jurisdictional issue was not so entwined with the merits that the issue could not be resolved absent a trial.   Id. at 1095-96.   The court reasoned "the central issue in determining the 12(b)(1) motion is whether the NPS had the discretion to determine what safety precautions to implement at Sheep Mountain Table.   If it was a discretionary decision, then the FTCA waiver of immunity is not applicable and the Court is without jurisdiction."   Id. at 1096.   The court further reasoned "[t]he lynchpin of such a determination is the presence of federal statutes, guidelines, or policies which mandate certain conduct. . . . This inquiry differs from the merits of plaintiff's negligence claim against the defendant and is not so enmeshed that a trial on the merits is required."   Id.

Ms. Schmitt's case is no different.   The court's evaluation of whether Ranger Huston's actions qualify for the discretionary function exception to the FTCA, see 28 U.S.C. § 2680(a), is separate from an inquiry into the merits of Ms. Schmitt's wrongful death claim.   The two analyses are severable.   The

4

gravamen of the court's inquiry into the discretionary function exception is the presence of federal statutes, guidelines or policies bearing on the discretion afforded to Ranger Huston's actions.   The fact that an administrative policy *may* also inform the duty of care owed by a BLM employee does not render the jurisdictional question so enmeshed with the merits of plaintiff's wrongful death claim that a trial on the merits is required.[4]   Plaintiff's objection is overruled.

### 2.    The Discretionary Function Exception is Applicable.

"It is well settled that the United States may not be sued without its consent."   Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 671 (8th Cir. 2008).   "Congress waived the sovereign immunity of the United States by enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment."   Riley v. United States, 486 F.3d 1030, 1032 (8th Cir. 2007) (internal quotation marks and citations omitted).   However, the United States does not waive sovereign immunity when the "discretionary function" exception applies.   Id.   The discretionary function exception provides no liability shall lie for "the exercise or performance or the failure to exercise or perform a discretionary function or duty

---

[4]Notwithstanding plaintiff's assertions to the contrary, the duty owed by Ranger Huston to Mr. Schmitt is a contested issue.   In its original motion to dismiss, the government asserted there is no private-person-liability analog for Ranger Huston.   See Docket 21 at p. 6.   The government also asserts SDCL § 3-21-9 immunizes it from any liability stemming from Mr. Schmitt's death.   Id. at pp. 6-10.   The court did not need to reach these issues because the discretionary function exception resolved the case.

on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."   28 U.S.C. § 2680(a).

"The purpose of the discretionary function exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " Hinsley, 516 F.3d at 672 (quoting United States v. Gaubert, 499 U.S. 315, 323 (1990)).   "This discretionary function exception to the FTCA 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.' "   Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 795 (8th Cir. 1998) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).   "To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction."   Id. (citations omitted).

A two-part test determines when the discretionary function exception applies.   "First, the conduct at issue must be discretionary, involving an element of judgment or choice . . . and not controlled by mandatory statutes or regulations[.]"   Hinsley, 516 F.3d at 672 (internal quotation marks and citations omitted).   "If the employee violated a mandatory statute, regulation, or policy, the conduct does not involve an element of judgment or choice, and therefore, the conduct is not sheltered from liability under the discretionary function

6

exception."   Id.   If no mandate exists, "the action is considered a product of judgment or choice and the first step is satisfied."   Id. at 673 (citations omitted).

Under the second part of the test, the court must "determine whether the judgment or choice was based on considerations of public policy."   Id. (citations omitted).   "If the challenged action was based on a judgment grounded in social, economic, or political policy, the discretionary function exception applies."   Id. (citations omitted).   "It is the nature of the conduct and whether the conduct is susceptible to policy analysis rather than the status of the actor that governs whether the exception applies."   Metter v. United States, 785 F.3d 1227, 1231 (8th Cir. 2015) (internal quotation marks and citations omitted).   "The exception protects only governmental actions and decisions based on considerations of public policy, and there is a rebuttable presumption that the government agent's acts are grounded in policy when established governmental policy . . . allows the agent to exercise discretion."   Id. (internal quotation marks, brackets and citations omitted).

### A.   Ranger Huston's Conduct Was Discretionary

Ms. Schmitt objects to the magistrate judge's application of the first prong of the discretionary function exception.   Ms. Schmitt asserts Ranger Huston had no option but to ensure Mr. Schmitt's door remained locked, to inspect the vehicle, to remain in constant visual observation of Mr. Schmitt, and to personally operate the vehicle.   (Docket 51 at pp. 5, 7).   Ms. Schmitt also asserts Ranger Huston was subject to an informal policy to utilize and inspect

7

the child safety locks.   Id. at 7.   Ms. Schmitt references BLM Law Enforcement General Order 03 for the proposition that "[a] LEO [Law Enforcement Officer] who has in custody or who is charged with the custody of any person(s) under arrest or detention is responsible for the proper safeguarding and protection of such person(s) and their property."   (Docket 40-11 at p. 3).   Ms. Schmitt citing McMichael v. United States, 856 F.2d 1026 (8th Cir. 1988), asserts "[t]he manner in which a broad mandate is performed directly relates to the challenged conduct and establishes a nondiscretionary function."   (Docket 51 at p. 6).

In McMichael, the United States Department of Defense ("DOD") contracted with Celesco Industries, Inc. to produce explosive photo-flash cartridges.   856 F.2d at 1028.   An explosion occurred at the Celesco plant killing seven employees, seriously injuring five and causing minor injuries to many others.   Id.   The contract between Celesco and the government required Celesco to promulgate safety provisions and comply with safety standards set by the DOD.   Id. at 1029.   This included the presence of three on site quality assurance representatives.   Id.   The inspectors' regular procedures included a 51-step review checklist for safety compliance.   Id.   The United States Court of Appeals for the Eighth Circuit determined that although "the initial discretion granted by the regulations to the [DOD] was broad; the inspectors, however, violated the [DOD's] own policy directives by failing to comply with the specific procedures mandated by the [DOD]," specifically the inspectors failed to comply

8

with Item 16 on their 51-step checklist regarding evacuation when an electrical storm hits.   Id. at 1033.

General Order 03 provides that a BLM law enforcement officer ("LEO") is responsible for the safeguarding and protection of a person in his custody.   BLM Law Enforcement Operation Manual H-9260-2 provides specific guidelines and procedures governing the handcuffing, searching and transportation of persons taken into BLM custody.   (Docket 40-9).   The BLM's policy regarding vehicle maintenance states only that "LEOs must keep their assigned vehicles reasonably clean.   Vehicles must be refueled and given a daily inspection at the start and end of each shift to ensure vehicle and equipment readiness for response to emergency situations."   (Docket 40-13 at p. 2).   The BLM indicates at the time of Mr. Schmitt's accident "there was no policy on disabling interior door handles but agree[s] Ranger [name redacted] did everything correctly in manually locking the door before transport."   (Docket 40-14 at p. 9).   Ms. Schmitt has not identified any policy or guidelines beyond an informal policy based on Ranger Huston's habits that imposes a duty to use or inspect child safety locks.   Unlike McMichael, there is no specific procedure with which Ranger Huston failed to comply.   Ranger Huston's own habits do not impose an agency mandate.   (Docket 49 at p. 13).   The court finds the first part of the discretionary function exception is satisfied as to the child safety locks.   See Hinsley, 516 F.3d at 673.

9

Ms. Schmitt briefly asserts Ranger Huston had a "duty to maintain constant visual observation" of Mr. Schmitt during transport.   (Docket 51 at p. 8).   Ms. Schmitt relies on the affidavit of plaintiff's proffered expert Philip Hayden as the basis of this duty.   Id.   Mr. Hayden's opinion does not impose a duty on Ranger Huston to maintain constant visual observation of Mr. Schmitt and no such specific duty has been identified in BLM policies.   The court finds the first part of the discretionary function exception is satisfied on this point.

Ms. Schmitt asks the court to interpret BLM General Order 17 governing vehicles as requiring BLM law enforcement vehicles only be operated by BLM LEOs.   (Docket 51 at p. 9).   However, the court agrees with the magistrate judge's interpretation of the BLM's policy governing the use of motor vehicles. (Docket 49 at p. 13-15); see also Docket 40-13 at p. 1.   Ms. Schmitt asserts the magistrate judge erred in affording deference to the BLM's interpretation because the court must " 'disregard all evidence favorable to the moving party that the jury is not required to believe.' "   (Docket 51 at p. 9) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000)).

In Reeves, the Supreme Court determined the standard for granting a motion for judgment as a matter of law under Fed. R. Civ. P. 50 mirrored the standard for granting a motion for summary judgment under Fed. R. Civ. P. 56. See Reeves, 530 U.S. at 150.   Therefore, when considering a motion for judgment as a matter of law, courts "must disregard all evidence favorable to the moving party that the jury is not required to believe."   Id. at 151.   The

magistrate judge decided the government's motion on the basis of the

government's Rule 12(b)(1) motion to dismiss.   (Docket 49).   The magistrate

judge did not reach the government's alternative motion for summary judgment.

Ms. Schmitt's summary judgment argument is inapposite

In determining whether BLM's policies imposed a mandatory duty on

Ranger Huston, the magistrate judge correctly considered and gave deference to

the BLM's interpretation of its own policy.   See Appley Bros. v. United States,

164 F.3d 1164, 1172 (8th Cir. 1999).   The BLM concluded Ranger Huston's

decision to allow South Dakota Conservation Officer Eastman to drive the BLM

vehicle was in compliance with its vehicle usage policy.   See Docket 40-14 at pp.

6-7.   The court further notes that the BLM's interpretation is reasonable in light

of the policy's reference to "law enforcement personnel" rather than the more

narrow category of "BLM law enforcement officers" in light of how closely the BLM

works and cooperates with other state and local regulatory and law enforcement

officials in the protection of public lands, especially in rural areas where

intra-agency assistance may be hours away.   See, e.g., Docket 40-11 at p. 7

(BLM General Order 3 describes cooperation between the BLM and state and

local entities.); (Docket 40-14 at p. 10) (describing how the State Chief Ranger

was stationed in Billings, Montana, and drove six hours overnight to South

Dakota to satisfy his BLM "critical incident" obligations); (Docket 40-4 at p. 7)

(describing how Ranger Huston would join South Dakota Game Fish and Parks

officers on boat patrols).   The court finds the first part of the discretionary function exception is satisfied.

Ms. Schmitt claims Ranger Huston violated the BLM seating protocol by sitting directly in front of Mr. Schmitt.   (Docket 51 at pp. 8-9).   Ms. Schmitt asserts because Ranger Huston was the only BLM LEO in the car BLM Handbook H-9260-2, Chapter VI (Docket 40-9 at p. 2) dictates that Mr. Schmitt should not have been allowed to sit directly behind him.   As demonstrated above, the BLM policies afford Ranger Huston discretion in allowing other law enforcement personnel to drive the BLM while he is also in the car, which necessarily alters the typical single BLM LEO and transportee seating arrangement. Furthermore, the BLM interpreted this provision and determined Ranger Huston was in compliance.   (Docket 40-14 at pp. 7-8) (applying the provision for cases where two BLM LEOs are in the vehicle).   The court affords this interpretation great deference and finds the first part of the discretionary function exception is satisfied.

## B.   Ranger Huston's Judgment Was Based on Considerations of Public Policy

Ms. Schmitt objects to the magistrate judge's reliance on Hart v. United States, 630 F.3d 1085 (8th Cir. 2011), in finding that Ranger Huston's actions regarding the inspection of his vehicle, whether to employ child safety locks and allowing Officer Eastman to drive his vehicle, were grounded in public safety, economic or other public policy concerns.   (Docket 51 at pp. 10-11).   Ms. Schmitt asserts Ranger Huston's failure to check the child safety locks was due

to inattention and his decision to allow Officer Easton to drive the car was not an on the spot decision as was the case in <u>Hart</u> but rather a sensible decision based on a concern for efficiently completing reports.   <u>Id.</u> at 11-12.

"In deciding whether the nature of the [challenged] actions [are] 'susceptible to policy analysis,' '[t]he focus of the inquiry is not on the agent's subjective intent.' . . . Rather, we look to whether the decision being challenged is "grounded in social, economic, or political policy.' " <u>Metter</u>, 785 F.3d at 1231-32 (8th Cir. 2015) (quoting <u>Gaubert</u>, 499 U.S. at 323, 325).   The court is aware that "there is a rebuttable presumption that the government 'agent's acts are grounded in policy' '[w]hen established governmental policy . . . allows [the] agent to exercise discretion."   <u>Id.</u> at 1231 (quoting <u>Gaubert</u>, 499 U.S. at 323-24).

The BLM had no policy requiring the use or inspection of child safety locks at the time of Mr. Schmitt's accident.   The BLM Board "discussed child locks and agreed child locks are good for stopping children from opening doors, but not sufficient to prevent adults from manipulating the lock."   (Docket 40-14 at p. 8). The BLM Board noted "how permanently disabling the interior door handle is different than temporar[ily] disabling the door via the child lock.   Ranger [name redacted] explained by totally disabling the door will ensure safety during transport of individuals in custody of BLM law enforcement officers."   <u>Id.</u> at 9.

The BLM made a policy determination not to require its LEOs to use child safety locks.   The BLM's vehicle maintenance provision, which makes no reference to the inspection of child safety locks, is a corollary of this policy

13

determination.   See Docket 40-13 at p. 3.   Ms. Schmitt's assertion that Ranger Huston carelessly failed to inspect the vehicle's child safety locks, despite Ranger Huston being under no obligation to do so, is actually a challenge to BLM's policy decision that LEOs need not use nor inspect child safety locks on their law enforcement vehicles.   Ms. Schmitt failed to rebut the presumption that Ranger Huston's conduct was grounded in policy.

Ranger Huston's decision to allow Officer Eastman to drive his vehicle while he completed the requisite reports in the passenger seat of his law enforcement vehicle is also grounded in policy.   Ms. Schmitt asserts Ranger Huston's decision to allow Officer Eastman to drive was not an on the spot decision under Hart and was not grounded in policy but rather a concern to efficiently complete reports.   The Eighth Circuit said in Hart:

> In general, because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how to best fulfill that duty are protected by the discretionary function exception. . . . [The agent is] required to consider his training, the need to restrain [the arrestee], the concern for [the arrestee's] safety, the public's safety, his available resources, and the information at hand in determining the proper course of action.   All of these factors indicate that the decision regarding how to best effectuate an arrest warrant is "fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate."

Hart, 630 F.3d at 1091 (quoting Williams v. United States, 314 Fed. Appx. 253, 257–58 (11th Cir. 2009)).[5]

---

[5]The court will not further elaborate on the facts in Hart as the report and recommendation provides an extensive analysis of the case.   See Docket 49 at pp. 17-18.

14

It is clear Ranger Huston and Officer Eastman were working together to restore order to an emergency situation caused by an intoxicated person, later determined to be Mr. Schmitt, trying to fight other campers at the Orman Dam. (Docket 49 at p. 2).   Ranger Huston was called at home and asked to respond to the 911 call.   Id.   Ranger Huston in turn called Officer Eastman and asked him for assistance in responding to the call.   Id.   After Mr. Schmitt was arrested, Ranger Huston asked Officer Eastman to drive the vehicle so he could sit in the passenger seat and promptly complete the necessary reports associated with Mr. Schmitt's arrest.[6]   Id. at p. 4.   The BLM found under these circumstances that Ranger Huston's decision was in compliance with BLM General Order 17, Vehicles, IV, because "[i]t would have been unsafe to have [name redacted] attempt to complete the paperwork while driving or if [name redacted] would have done the paperwork at the scene.   [Mr.] Schmitt needed to be removed from the scene and transported in a prompt fashion."   (Docket 40-14 at p. 7).

BLM officers and South Dakota Game Fish and Parks officers like Ranger Huston and Officer Eastman often operate in remote areas where intra-agency support may not be available and travel time is often measured in terms of hours.   In order to enforce the law, protect public land, protect the public and

---

[6]The context of Ranger Huston's request for inter-agency assistance and decision to have Officer Eastman drive the vehicle must not be overlooked.   Mr. Schmitt's accident occurred during the nighttime hours of September 5, 2010. (Docket 1 at p. 3).   Although Ranger Huston referenced this as Memorial Day weekend (Docket 40-4 at p. 80), it is general knowledge that this was in fact Labor Day weekend.   This was a busy time for law enforcement at the Orman Dam as Ranger Huston testified he had worked three consecutive days of twelve hour shifts.   Id.

protect each other, law enforcement agencies must work together, and law enforcement personnel must have the ability to exercise discretion in determining the most effective way to satisfy the obligations of their office.   The court will not engage in judicial second guessing of law enforcement's on the spot handling of an emergency situation, including asking for and receiving help from members of other law enforcement agencies.   To do so would disrupt the ability of federal, state and local law enforcement officers to fulfill their duties.

At the time of Mr. Schmitt's arrest, Ranger Huston determined Mr. Schmitt must be detained immediately.   Ranger Huston intended to complete the necessary paperwork promptly on the way to jail while Officer Eastman drove the vehicle.   Ranger Huston made a discretionary decision at the scene of the arrest about the best way to fulfill his law enforcement obligations in the arrest and transport of Mr. Schmitt.  See Hart, 630 F.3d at 1090 ("[A] federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest—including how best to restrain, supervise, control or trust an arrestee—fall within the discretionary function exception to the FTCA absent a specific mandatory directive to the contrary.").   Ms. Schmitt failed to rebut the presumption that Ranger Huston's decision to allow Officer Eastman to drive was grounded in policy.   See Hart, 630 F.3d at 1091 (quoting Williams, 314 Fed. App'x. at 257-58).   Plaintiff's objections are overruled.

Because the discretionary function exception applies, sovereign immunity is not waived and the court is without jurisdiction to adjudicate Ms. Schmitt's

16

complaint.   The government's Rule 12(b)(1) motion to dismiss is granted.   The court dismisses Ms. Schmitt's complaint without prejudice.   See Hart, 630 F.3d at 1091.   The court need not address the government's remaining arguments in support of its motion to dismiss or, in the alternative, for summary judgment. The government's motion to strike the affidavit of Phillip Hayden is denied as moot.   (Docket 42).

## ORDER

Based on the above analysis, it is

ORDERED that the plaintiff's objections (Docket 50) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 49) is adopted in full.

IT IS FURTHER ORDERED that the government's motion to dismiss (Docket 20) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed without prejudice.

IT IS FURTHER ORDERED that the government's motion to strike (Docket 42) is denied as moot.

Dated March 24, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

17